OPINION of the Court, by
Judge Wallace.
As in other suits in chancery, the court will first inves-tigace the claim of the appellees, who were complainants in the court below. They rely on the following entry : “ November 20th 1781, Nathaniel Hart enters 1400 acres of land, upon two treasury warrants, See. Ij ing on the waters of Paint Lick creek, including a smkmr spring, and the land surveyed for John Bruice, assignee of 1 homas Pettm.1'
_ A survey was not executed, on this entry until the 25'A or January, 1805 ; shortly after which it was assigned to the appellees by Nathaniel Hart, one of the sons and executors of Nathaniel Hart, in whose name the entry was made, and who departed this life a few months after its date.
_ it is objected to Ais survey, that it was made subsequent to the act of assembly, of 1797, entitled u an act giving lurther time to the owners of lands to survey the same,” &c. which taken in connection with an act of 1785, ainendatorv of a former act respecting entries , , . , ⅜ ° ana surveys, by imputation declares that entries for land in general shall become void, if not survey ed before the first day of October, 1798 ; and that this entry was not saved by the proviso in the first mentioned act, allowing infants and feme coverts three years after their feyerai disabilities are removed, to complete surveys oa *372 their entries; because Nathaniel Hart, deceased, had devised this entry with all his other lands to his executors ; one of whom it appears came to the age of 21 years, and qualified as his executor, about the year 1791 or 1 792.
■ IjVrA tU Un /< -, - C.4M) te>« >ld - V- r 'f arh.iujb l ru o tlr «9 Vt) wuc . t jLouv. n to rr.j • - ’ ny.
adoM 'furvey be'mg. ascer-tainéd, and an feme umber of acres calling “ to include thatfurvey & a fmkng spring, che call for the fpriog may be an immaterial call, not vicia-
Where there t/ in as* main->ng the unes of bie to w- per-mrvey, that tnoce ihouid be Zák.tn ftn h is n,,‘, * mavora-fon claiming under it-
Two persons claiming under ¿xft'n ct entries prayed an fip peal, «ily one complied with tf,e °irder, executing bond, the appeal ⅛ effectual only a5 ts hiro'
*372 It is true that Nathaniel Hart, deceased, has by- his last will and testament confided to his executors seve-v , p-ual trusts concerning saviujr, selling and distri-w ’-b 'Í' .ots his executors with the legal right or title to ,nv of them, more than any of his other devisees, to . i of v horn any of his lands are specifically devised. tf rh t o to be left as a common fund, together with ' die testator’s estate, to discharge his debts, es and legacies. But if the court be mistaken in it would certainly be an over rigid construction of the will, to suppose that the testator meant to subject lands to loss or forfeiture by the default of his executors, which had been, or should otherwise be secured by law. And in the present case it is proven that the youngest son of the testator continued to be an infant until within about two years of the time when this entry was surveyed, and that he had some daughters who were reme coverfs at his death, and continued to be so , r , . until the survey was made. 1 heretore this court concurs in opinion with the court below, that this enfrv ^ t0 ()e comprehended in the provision which has been recited ; and that m this point of view, the survey must be considered as valid.
Moreover, it cannot with propriety be urged that this entry had become void by not appointing an agent within the county of Lincoln, where the land was situated, as was required, by the before mentioned act of 1785 ; because when that act passed all the devisees of Nathaniel Hart actually resided in that county ; and it y. svlfHcient to observe, that on considering the whole of this act together, and the reasons on which it was founded, it does not appear to have been the intention of the legislature to compel she owner of an entry to appoint an agent ⅛ the county where he resided himself. For the rea:,oni«g more at large on this subject, the case of Simpson vs. the Register (a) formerly decided by this? , *373 court, may be referred to 5 and although that decision » -I - • f * T • 1 * 1 • | was not given on an application ox the kind within the jurisdiction of the court, yet the opinion therein rendered still seems to be rational. But the validity of this entry,, from the calls it contains, and the survey made . - , ,. , J thereon, yet remains to be dtscu.sed.
It is abundantly proven that Paint Lick creek, and the waters of Faint Lick creek, were generally known hy those names at the time, and long before this entry was made, to those who were conversant in that part of the country, and that the land lies on the waters of Paint Lick creek. Also, it appears that June 18th, 1780, two surveys adjoining each other were made for John Bruice, as assignee of Thomas Pettitt, on a western branch of Paint Lick creek ; one on a settlement right of 4<X) acres, and the other on a pre emption warrant of 1000 acres, which it must be presumed were recorded in due time, although they were not registered for several years thereafter; and it not being shewn that any other survey was ever made for John Bruice, it must ah o be presumed that these surveys were intended fay Halt, and that he considered them as composing one tract of land. Moreover, it is further proven drat pri- or to the date of Hart’s entry, Bruice’s land had become known to a great number of persons at the neighboring stations, oí which there were six or eight, some af them witi in a rp¡le or two and all of them, within ten or twelve miles of it, and that a spring generally called and known by the name of Petlitt’s spring, was included therein, which was one of the largest and most notorious springs in that quarter, and must have aided in giving celebrity to those surveys. Indeed the lines of the surveys might not have been known to many, and it is believed not to be common for the lines of any survey to be known to a great multitude. But this is a defect which can always be supplied by making reasonable inquire, as is more fully explained in the case Estill, &c. vs. Hart's heirs (Hard. 576); and it ought farther to. be observed, that the call to include Bruice’s land must be understood to mean, being bounded by the same lines, inasmuch as Pettitt’s surveys and Hart’s entry were for the same quantity. As to the call “ including a sinking spring,” it is proven that there was a very remarkable out within Uruice’s pre-emption survey, *374 which was well known to severa!, and no other sinking spring is shewn in that neighborhood. This, therefore, might easily have bean found, and would undoubtedly be taken as the one intended, and would have contributed to identify the land. But in every other respect it must be considered as either an immaterial or a repugnant call; because the situation and form of the land was fixed by the other calls of the entry. Therefore this court concurs with the court below, that the entry is well supported.
It also seems to this court that the survey of Hart’s entry has been made conformably to the lines of Bruice’s surveys, or nearly so. But as all the boundaries of either Bruice’s land or Hart’s survey cannot now be ascertained with absolute certainty, on account of other lines which have been run parallel and near to them, this court likewise approbates the decision of the court below in directing that those lines should be taken which are most favorable to the appellant Kennedy : and the interest of Wooley in this, or in any other respect, cannot with propriety be attended to until it is settled whether he is or is not ati appellant. But the •appellant Kennedy claims under a pre-emption, which is a right of superior dignity to that of the appellees, and had it been shewn to have been properly entered; and surveyed, it ought to have prevailed in this contest. But Kennedy has relied entirely upon his having obtained the elder grant, which.is of a date subsequent to the entry on which the appellees found their claim ; and therefore the decree in question, so far as relates to him, seems to be correct.
It has been objected by the counsel for the appellees that the suit as to Wooley is not before this court, his name not having been inserted in the appeal bond, and the security thereto not being bound as to him. On examination it is found to be the fact, that the condition on which the law and the court below had authorized the appeal, which was prayed by Kennedy and Wooley, was not complied with by Wooley ; and as it appears that his reliance was on a claim wholly independent ol the one on which Kennedy relied, and that the decision, on one of them might be very different from that on the other, it is clear that neither Kennedy nor his security «an fee considered as responsible for Wooley ; and cett- *375 seqacntly that this court cannot, with propriety,now intermeddle with the suit as it relates to Wooley.
Wherefore, it is decreed and ordered, that the said decree of the circuit court for the cotintv of Garrard, so far as it relates to the appellant Thomas Kennedy, be affirmed ; and that the appellees do recover from Him their costs in this behalf expended ; and moreover that the said suit be remanded to the said court, that it may make such further decrees and o.rders therein as law and equity may require, &c,

 Pr. Dec* p, Accord, Crmg) Je&essnd Kelly vs. Regifter, Vol. 1, p. 310-11.